# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT COLUMBUS

WESLEY COONROD,

                Petitioner,           :    Case No. 2:14-cv-839

    - vs -                       District Judge Michael H. Watson
                                   Magistrate Judge Michael R. Merz

WARDEN, Madison Correctional
Institution,

                             :
                Respondent.

# REPORT AND RECOMMENDATIONS

       This habeas corpus case is before the Court for decision on the merits. Coonrod's initial

Petition was filed pro se (ECF No. 3) and pled the following grounds for relief:

> **GROUND ONE:** Petitioner was deprived of a fair and impartial
> jury trial where the trial court abused its discretion by dismissing
> one single holdout juror without just cause, after deliberations had
> begun, and replacing said juror with an alternate juror, who had
> been gesturing and talking to the prosecutor throughout the trial,
> who returned a guilty verdict just hours later, in violation of the
> U.S. Constitution.
>
> **Supporting Facts:** The first trial was taken from law enforcement,
> expert and lay witnesses. At the end of five days of deliberations
> the jury announced it was deadlocked. The judge dismissed a juror,
> put in an alternate, and short while later the jury brought back a
> guilty verdict on child endangering, but remained deadlocked on
> capital murder, murder, reckless homicide, involuntary
> manslaughter, aggravated arson.
>
> A change of venue caused the second trial to be held in Pickaway
> County, Ohio. The same evidence was presented by both sides.
> After the second trial jury became deadlocked, the holdout juror
> was questioned by the judge and she said she could be fair and
> impartial; with no factual basis apparent on the record, the judge

1

choose [sic] not to believe her and dismissed her from the jury. This was the second time the trial judge dismissed a lone holdout juror off two different deliberating jury's [sic]; this second time, the lone holdout juror was replaced by an alternate who had been seen gesturing and talking to the State prosecutor. Within hours that stacked jury brought back a verdict of guilty of two counts of Involuntary Manslaughter.

The trial court had absolutely no factual basis to remove this juror during deliberations but he did and this violated petitioner's right to a jury trial by a fair and impartial jury.

**GROUND TWO:** Petitioner was deprived of a fair trial where there was no evidence or insufficient evidence to support the essential elements of child endangerment conviction in violation of U.S. Constitution.

**Supporting Facts:** The State offered no theory or evidence in support of all essential elements of child endangerment.

**GROUND THREE:** Petitioner was deprived of a fair trial where there was no evidence or insufficient evidence to support the essential elements of involuntary manslaughter conviction in violation of the U.S. Constitution.

**Supporting Facts:** The State offered no theory or evidence in support of all essential elements of involuntary manslaughter.

(Petition, ECF No. 3, PAGEID 28.)

After the Magistrate Judge reference in this case was transferred to the undersigned, counsel was appointed and, without objection by Respondent, Petitioner filed an Amended Petition pleading the following grounds for relief:

**GROUND ONE:** Mr. Coonrod's rights guaranteed by the Fifth and Sixth Amendments to the United States Constitution made applicable to the States by the Fourteenth Amendment were violated when the trial judge improperly dismissed Juror No. 5 without sufficient cause thereby denying Mr. Coonrod an impartial jury.

**GROUND TWO:** Mr. Coonrod's rights guaranteed by the Fifth Amendment to the United States Constitution made applicable to the States by the Fourteenth Amendment were violated because the requisite elements supporting Mr. Coonrod's convictions for child endanagerment [sic] were not supported by sufficient evidence.

**GROUND THREE:** Mr. Coonrod's rights guaranteed by the Fifth Amendment to the United States Constitution made applicable to the States by the Fourteenth Amendment were violated because the requisite elements supporting Mr. Coonrod's convictions for involuntary manslaughter were not supported by sufficient evidence.

(First Amended Petition, ECF No. 17, PageID 3037-38, 3041.)

## Procedural and Factual History

Coonrod was indicted by the Highland County Grand Jury in 2010 on two counts of aggravated murder in violation of Ohio Revised Code § 2903.01(B), with felony and capital crime specifications (Counts 1 and 2); aggravated arson in violation of Ohio Revised Code § 2909.02(A)(2) (Count 3); two counts of murder in violation of Ohio Revised Code § 2903.02(B) (Counts 4 and 5); and two counts of child endangering in violation of Ohio Revised Code §2919.22(A) (Counts 6 and 7)  (State Court Record, ECF No. 7-1, PAGEID 87).

Given the pre-trial publicity, Coonrod moved for a change of venue prior to trial which the court denied  (State Court Record, ECF No. 19, Exh. 4, PageID 3090). Coonrod also moved to suppress evidence seized from his residence arguing there was no probable cause for the search warrant (State Court Record, ECF No. 19, Exh. 10, PageID 3096).   Since the presiding trial judge signed the search warrant, Coonrod's motion was referred by the Administrative Judge to another judge to decide.

Coonrod filed a motion *in limine* to exclude evidence from an earlier fire which the Court granted, noting the State's position that it did not intend to introduce such evidence  (State Court Record, ECF No. 19, PageID 3103).

The court ordered Coonrod to undergo a psychological evaluation to determine his mental condition at the time of the fire and also whether he was competent to stand trial (State Court Record, ECF No. 19, PageID 3091, 3093).  The evaluation determined that Coonrod was competent to stand trial (State Court Record, ECF No. 19, PageID 3381).

The case proceeded to jury trial and Coonrod was found guilty on the two child endangering charges (Counts 6 and 7).  The jury was unable to render a unanimous verdict as to Counts 1-5  (State Court Record, ECF No. 19, PageID 3106).  Coonrod moved and the court granted his motion to hold his sentence on Counts 6 and 7 in abeyance while the court determined disposition of the remaining charges (State Court Record, ECF No. 19, PageID 3108).

Thereafter, the Court granted the State's motion to dismiss the two capital murder charges, Counts 1 and 2 (State Court Record, ECF No. 19, PageID 3115).  Coonrod renewed his motion for change of venue and the court agreed to transfer the case to Pickaway County, also in the Fourth Appellate District so that any appeals could be consolidated  (State Court Record, ECF No. 19, PageID 3117).

The case proceeded to a second trial and the jury found Coonrod not guilty on Count 1 (aggravated arson) and guilty of the lesser included offense of involuntary manslaughter on Counts 2 and 3 (State Court Record, ECF No. 19, PageID 3120-23).

The court merged the two endangering children convictions with the two involuntary manslaughter convictions and sentenced Coonrod to 10 years in prison for each count, to be

served consecutively, for an aggregate sentence of 20 years in prison (State Court Record, ECF

No. 19, PageID 3127).

Coonrod, through counsel, appealed to the Court of Appeals of Ohio, Fourth Appellate

District, Pickaway County, raising the following assignments of error:

> 1. The trial court abused its discretion by dismissing a juror without just cause in violation of Ohio state law, Ohio constitutional law, in addition to the Fifth and Sixth Amendment to the federal Constitution made applicable to the states by the Fourteenth Amendment.
>
> 2. The trial court [sic] in allowing Joyce Krech to testify as an expert to whether or not appellant was intoxicated in violation of Ohio statutory law, Ohio constitutional law, as well as in violation of the Fifth Amendment to the federal Constitution made applicable to the states by the Fourteenth Amendment.
>
> 3. There was insufficient evidence to convict the appellant of involuntary manslaughter in violation of Ohio state law, Ohio constitutional law, in addition to the Fifth Amendment to the federal Constitution made applicable to the states by the Fourteenth Amendment.
>
> 4. There was insufficient evidence to convict the appellant of child endangerment in violation of Ohio state law, Ohio constitutional law, in addition to the Fifth Amendment to the federal Constitution made applicable to the states by the Fourteenth Amendment.
>
> 5. The term of incarceration imposed by the trial court was arbitrary and capricious in violation of Ohio state law, Ohio constitutional law, as well as the Eighth Amendment to the federal Constitution made applicable to the states by the Fourteenth Amendment.

(State Court Record, ECF No. 19,  PageID 3132.)

The Fourth District set forth the facts of this case on direct appeal as follows:

> [¶ 3] On March 7, 2010, a fire broke out at the appellant's apartment. Appellant lived at the apartment with his four-year old and three-year old sons. Appellant escaped the fire. Tragically, however, the two children did not escape and suffered fatal injuries.

5

[¶ 4] An investigation led investigators to believe that the fire was set intentionally. Investigators discovered a can of lighter fluid near the apartment and a lighter located on the floor. The state's investigators believed that someone poured an ignitable liquid to start the fire. The state's investigation further showed that the apartment's windows and doors had been locked.

[¶ 8] Before the second trial began, the court transferred venue to Pickaway County. At trial, the state argued that appellant intentionally set the fire, left his children trapped inside the burning building, then stood idly by while the children screamed for their lives. The investigator that the landlord's insurance company hired, James David Hunter, testified that he did not believe that a three- or four-year old child started the fire. He explained that a young juvenile fire starter usually engages in basic fire starting, such as setting a leaf on fire. He stated that a young juvenile typically would not introduce "an ignitable liquid into a structure" or set "multiple rooms on fire." Hunter believed that the fire resulted from an intentional act of arson.

[¶ 9] Paint Creek EMS Firefighter James Michael Gilbert testified that he responded to the fire. Gilbert observed that appellant appeared to be "in a dazed state." Gilbert repeatedly asked appellant where the children were located, but appellant did not respond. Gilbert also noticed that appellant did not have any soot on him and did not appear to be injured.

[¶ 10] Former Greenfield police officer James Dale Dunn, Jr. testified that he observed appellant at the hospital where his children had been transported. Dunn observed appellant's bloodshot eyes and erratic behavior. One minute appellant was nice and calm, and the next he would stiffen, "like he was ready to fight the world." Dunn believed that appellant was under the influence of "something."

[¶ 11] Appellant's neighbor, Benjamin Kelly Stockton, testified that he broke a window to enter appellant's burning apartment. He stated that he heard the children screaming and that he tried to locate them. When Stockton saw appellant, he asked him where the children were. Appellant did not tell Stockton where to locate the children, but appellant did "ask [Stockton] for a cigarette."

[¶ 12] Jason Jenkins, another bystander, also attempted to rescue the children. When he first arrived on the scene, he saw appellant "around the back * * * standin' on the [back] porch." Jenkins

stated that appellant was peering in the window. Jenkins asked appellant where the children were and appellant stated, "I don't know." Jenkins told appellant to get out of the way and kicked in the door. Jenkins tried to enter the apartment, but the smoke was too heavy. Jenkins then tried to enter through the windows and the front door, but he discovered that they were all locked. Jenkins explained that after the Life Squad arrived, he asked appellant where in the house the children were and appellant "was just like dazed." After "25, 30 times," appellant finally told Jenkins, "Me and the kids were in the back bedroom asleep." Jenkins also stated that appellant never attempted to enter the apartment to save his children. Jenkins testified that "the only thing [appellant] ever did was he asked [Jenkins' fiancé] for a cigarette." Jenkins further explained that he detected a "very strong" odor of alcohol when he spoke with appellant.

[¶ 13] Rhonda Lester, Jenkins' fiancée, stated that she heard the children screaming as Jenkins and Stockton attempted to rescue them. Lester stated that appellant did not attempt to help, but, instead, asked if anyone had a cigarette. Lester likewise testified that appellant smelled like alcohol.

[¶ 14] Dara Gullett, a counselor at Alternatives to Violence Center, testified that she overheard a conversation between appellant and his former wife, Felicia Elliott, while at the funeral home. According to Gullett, appellant told Elliott that "he had tried to do everything he could to get the boys out of the house." Appellant told Elliott that Thomas fell asleep on the couch and that Steven had been in the bedroom with him. Later, appellant changed his story and told Elliott that both boys were in sleeping bags in their bedrooms. Appellant changed his story again and told Elliott that he did not know where the boys were. Gullett explained that appellant's hand was bandaged and that she heard him tell Elliott that he injured his hand trying to open the boys' bedroom door. Later, appellant stated that he was unable to reach the boys' bedroom because the fire in the hallway was too hot. Gullett also heard appellant admit that he had been drinking on the night of the fire.

[¶ 15] Elliott testified that appellant told her different versions of the events that preceded the fire. She stated that appellant told her that (1) Thomas was asleep on the couch and Steven was in bed with appellant; (2) the boys were asleep in bed with appellant; and (3) appellant escaped through a window and then looked inside the back window to determine whether he could enter the apartment to save the boys.

7

[¶ **16**] Joyce Krech, an Adena Greenfield Area Medical Center nurse, testified that she encountered appellant after his children were admitted to the hospital. She stated that appellant was "very aggressive" and that she tried to comfort him by putting her hand on his shoulder. Appellant stated, "Get the fuck off of me." Krech stated that appellant was loud, swearing, and stumbling and that "[h]e had a very strong odor of alcohol about him." She stated that the odor of alcohol was "very, very strong" and that she could smell it from two to three feet away. Krech testified that she believed appellant was under the influence of alcohol.

[¶ **17**] State Fire Marshal's Office Investigator Trace Lawless testified that he spoke with appellant to determine what happened. Lawless recalled that appellant stated that he and the boys watched television and when Steven fell asleep, he carried him to the front bedroom. Later, Thomas fell asleep in the front bedroom. Appellant stated that he drank between four and five beers and went to bed around 11:00 p.m. Later, he awoke to smoke. He grabbed his bedroom door handle and it burned his fingers. Appellant stated that he saw the fire in the hallway and was unable to cross the hallway to reach the children's bedroom. Appellant stated that he escaped the apartment through the rear bedroom window. He also explained that he then tried to kick open the back door.

[¶ **18**] Lawless observed the burns on appellant's hands and testified that they were not consistent with the type of burns one would ordinarily receive from contacting a metal object, like a door knob. Lawless stated that contact with a metal object would leave a "singeing burn," not the "blistering burn" that he observed on appellant's hands. Lawless explained that a "blistering burn" results "from radiating heat, not direct contact with metal objects."

[¶ **19**] Lawless further explained that he did not believe appellant's version of events that he exited the building through the rear bedroom window. Lawless stated that the fire pattern around the window did not indicate that the window had been opened during the fire.

[¶ **20**] In his defense, appellant presented experts who opined that the cause of the fire was undetermined and that an ignitable liquid was not used to start the fire. Appellant also presented testimony from family members who stated that appellant did not smell like alcohol on the night of the fire.

8

**[¶ 21]** Appellant also testified in his defense. He stated that when he opened his bedroom door and saw the fire, he shut the door and exited through the back window. He then tried to kick in the back door. Appellant denied the witnesses' statements that he did nothing, other than ask for a cigarette. Appellant stated that he "was trying to get to my children." When questioned about Gullett's testimony about what she overheard at the funeral home, appellant stated: "I don't know what Mrs. Gullett is talking about, sir, but I wasn't talking about nothing other than making funeral arrangements for my dead children."

*State v. Coonrod,* 2012-Ohio-6302, 2012 Ohio App. LEXIS 5469 (4th Dist. Dec. 27, 2012).

Following the briefing on appeal, the court of appeals affirmed Coonrod's conviction (State Court Record, ECF No. 10, PAGEID 3240).

Coonrod moved the Ohio Court of Appeals for reconsideration which was denied on February 19, 2013  (State Court Record, ECF No. 19, PageID 3284).  Coonrod, pro se, filed an appeal to the Ohio Supreme Court which declined to accept jurisdiction.  *State v Coonrod,* 2013-Ohio-1857, 135 Ohio St. 3d 1433 (2015).

On January 6, 2012, Coonrod filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence pursuant to Ohio Revised Code § 2953.21 pleading the following grounds for relief:

> A. Petitioner was denied effective assistance of counsel.
>
> B. Petitioner was denied due process pursuant to the Fifth Amendment to the federal Constitution made applicable to the states by the Fourteenth Amendment.
>
> C. Actual innocence as a violation of Eighth and Fourteenth Amendments to the federal Constitution.

(State Court Record, ECF No. 19, Exh. 36, PageID 3351.) The court denied Coonrod's  petition for post-conviction relief (State Court Record, ECF No. 19, Exh. 38, PageID 3367-72) and Coonrod did not appeal.

# Analysis

**Ground One:  Denial of Impartial Jury by Dismissal of Juror No. 5**

**Procedural Default**

In his First Ground for Relief, Coonrod claims he was denied his constitutional right to an impartial jury when the trial judge in his second trial dismissed Juror Number 5.

Respondent asserts that Ground One is procedurally defaulted because it was not presented to the Ohio courts as a federal constitutional claim (Return of Writ, ECF No. 20, PageID 3432-39).

Petitioner responds by quoting Assignment of Error No. 1 presented to the Fourth District Court of Appeals which read:  "The trial court abused its discretion by dismissing a juror without just cause in violation of Ohio State Law, Ohio Constitutional Law, in addition to the Fifth and Sixth Amendment to the Federal Constitution made applicable to the states by Fourteenth Amendment."  He argues that this gave the Fourth District "an opportunity to remedy these constitutional infirmities" and that the court did not need to read beyond the appellant's brief "to find material to alert it to the presence of Mr. Coonrod's Fifth and Sixth Amendment claims." (Traverse, ECF No. 22, PageID 3470-71.)

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual

basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter*, 450 F.3d at 236; *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like factual situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts well within the mainstream of constitutional litigation.

*Franklin*, 811 F.2d at 326; *accord, Whiting v. Burt*, 395 F.3d 602 (6th Cir. 2005); *McMeans,* 228 F.3d at 681.

A state prisoner ordinarily does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief, or similar papers to find material that will alert it to the presence of such a claim. *Baldwin v. Reese*, 541 U.S. 27 (2004). When a defendant does so

little to present his claim that it has not been fairly presented, then the presumption under *Harrington v. Richter* that the state court decided the claim on the merits is "fully rebutted." *Johnson v. Williams*, 568 U.S. ___, 133 S. Ct. 1088, *; 185 L. Ed. 2d 105 (2013). On the other hand, when a federal claim is fairly presented but not addressed, "a federal habeas court must *presume* that the federal claim was adjudicated on the merits. . ." *Ross v. Pineda*, 2013 U.S. App. LEXIS 25481 (6th Cir. 2013), *quoting Johnson*, 133 S. Ct. at 1096 (emphasis added).

In this particular case, Coonrod's appellate attorney mentions the Fifth and Sixth Amendments in the Assignment of Error, but does not even specify which particular Fifth or Sixth Amendment rights is asserted to be violated. The only federal case law cited in arguing this Assignment of Error has nothing to do with jury impartiality.[1] The argument is that there was insufficient evidence that the removed juror was biased. The only state case having to do with the removal of a deliberating juror cited in the brief was *State v. Hutton*, 53 Ohio St. 3d 36 (1990), where an emotionally overwrought juror was replaced. The trial judge had cited *Hutton* as not analogous to the instant case and Coonrod agreed (Brief, State Court Record, ECF No. 19, Exh. 24, PageID 3148). The Brief does not discuss jury impartiality except to claim the juror's life experience was "inconsequential" and the replacement juror "was making inappropriate gestures and/or comments to the assistant prosecutor." *Id*. at PageID 3149.

Thus Petitioner did not use either federal or state cases employing constitutional analysis nor did he asserts his claim in terms so particular as to call to mind a specific constitutional right. Instead, he just cited to the whole of the Fifth and Sixth Amendments.

A closer question is whether he relied on facts "well within the mainstream of constitutional litigation." He does not now assert what that mainstream might be. In particular,

---

[1] Counsel cited *Bullington v. Missouri*, 451 U.S. 430 (1981), and *Arizona v. Rumsey*, 467 U.S. 203 (1984) for the proposition that because the first jury had rejected the capital charges, the second jury could not consider them (Brief, State Court Record, ECF No. 19, PageID 3147).

assuming he is referring to the Due Process Clause of the Fifth Amendment,[2] he does not advert to any Supreme Court precedent which mandates a procedure for excusing a deliberating juror. He does argue now about the right to an impartial jury, which is a right guaranteed by the Sixth Amendment, but he does not point to any place in the Brief where an express argument about jury impartiality was made.

In deciding this claim, however, the Fourth District applied both state and federal law allowing the removal of a juror for cause when the trial court is persuaded the juror cannot set aside life experiences and be impartial.

> **[\*P27]** A trial judge is empowered to exercise "'sound discretion to remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty is impaired.'"" State v. Brown, 2nd Dist. No. 24541, 2012 Ohio 1848, ¶46, quoting State v. Hopkins, 27 Ohio App.3d 196, 198, 27 Ohio B. 235, 500 N.E.2d 323 (11th Dist. 1985), quoting United States v. Spiegel, 604 F.2d 961, 967 (C.A.5, 1979). A reviewing court will not disturb a trial court's ruling regarding a challenge for cause "'unless it is manifestly arbitrary and unsupported by substantial testimony, so as to constitute an abuse of discretion.'" State v. Jackson, 107 Ohio St.3d 53, 2005 Ohio 5981, 836 N.E.2d 1173, ¶38, quoting State v. Williams, 79 Ohio St.3d 1, 8, 1997 Ohio 407, 679 N.E.2d 646 (1997). Furthermore, a reviewing court must afford "'deference * * * to the trial judge who sees and hears the juror.'" Williams, 79 Ohio St.3d at 8, quoting Wainwright v. Witt, 469 U.S. 412, 426, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

> **[\*P28]** Under both R.C. 2945.25(B) and Crim.R. 24(C)(9), a trial court may excuse a juror for cause if the court determines that the juror "is possessed of a state of mind evincing enmity or bias toward the defendant or the state." Those provisions further provide that a trial court shall not disqualify a juror "by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from

---

[2] Contrary to the position taken on direct appeal and in the Amended Petition, the Fourteenth Amendment does not make the Due Process Clause of the Fifth Amendment applicable to the States. Instead, the Due Process Clause of the Fourteenth Amendment is directly applicable to the States. Of course, there are other Fifth Amendment rights which are made applicable to the States by the Fourteenth, e.g., the privilege against self-incrimination and the protection against double jeopardy.

> examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial." Additionally, former R.C. 2313.43 [FN 1 This provision has been repealed and re-codified at R.C. 2313.17(C)] stated that a juror could be challenged for cause "on suspicion of prejudice against or partiality for either party * * *. The validity of such challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased." "On a challenge for cause, '[t]he ultimate question is whether the "juror sw[ore] that he could set aside any opinion he might hold and decide the case on the evidence, and [whether] the juror's protestation of impartiality [should be] believed."'" State v. Perez, 124 Ohio St.3d 122, 2009 Ohio 6179, 920 N.E.2d 104, ¶140, quoting White v. Mitchell, 431 F.3d 517, 538 (C.A.6, 2005), quoting Patton v. Yount, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).

*Coonrod*, 2012-Ohio-6302 .  Thus the Fourth District understood it was being presented with a claim of right to an impartial jury and it applied relevant federal and state law in deciding that question.

It is therefore recommended that Respondent's procedural default defense to Ground One be OVERRULED.

**MERITS**

Besides her procedural default defense, Respondent also defends the First Ground for Relief on the merits (Return of Writ, ECF No. 20, PageID 3439-45).  In response, Petitioner cites federal case law holding that "the jury must stand impartial and indifferent [to the outcome] to the extent commanded by the Sixth Amendment." (Traverse, ECF No. 22, PageID 3471, *quoting Morgan v. Illinois,* 504 U.S. 719, 727 (1992), and citing to the same effect *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000)).

When a state court decides on the merits a federal constitutional claim later presented to a

federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Respecting this claim, the Fourth District found the following facts from the record:

> **[\*P22]**  After the court submitted the case to the jury, the jury foreman, Juror Number 4, sent a letter to the court that stated:
>
>> "We have a beligerent [sic] juror. I believe she has been in a similar situation as the defendant. She had a fire in her house, and sent her son upstairs in a smoke filled house. She is taking all discussions personal [sic]. I think we could reach a decision if she were replaced with one of the alternative [sic] jurors. Is this possible?"
>
> **[\*P23]**  The court met in chambers with appellant, his attorneys, the prosecutors, and the foreman to discuss the concern. The foreman advised the judge that the juror, Juror Number 5, had stated: "Basically that she was a single parent, she was a heavy smoker, the kids would climb on cabinets, they would be up all hours of the day or the night as young as two or three, she didn't get up to see what they were doing or — " The court interjected to explain that it was "more interested in * * * her experiences about fire." The foreperson then explained:
>
>> "She said that her son, basically started the house fire. She was out burning trash in the yard and that he was trying to help mommy and started a house fire burning trash inside the house. And she froze. I don't know what other adults were around or whatever, but she sent her son up to his smoke filled bedroom, and that if he had died, then charges would have been brought [against] her."
>
> The court asked whether the juror indicated "that * * * she's using this experience as part of her decision making process?" The foreperson responded:
>
>> "Yes. She's taking it very personal[ly]. She's identifying -—

15

The Court: And it doesn't mean that she's saying it's interfering with her deliberations or —

Juror No. 4: I didn't ask her specifically. It started with everything that was being brought up by other jurors in trying to answer her objections or to find out more about it and so on. It was evident, very evident to most of the jurors that she was taking it personally, that she was identifying with the defendant and —"

The foreperson further explained the juror's body language:

"When we were talking about the different things and reading the law and stuff, she was — had her arms crossed, leaned back, rolling her eyes, flipping her hair, like I took some notes when I went home that night so I would remember it, and it was — her body language was like a teenager that got caught doing something she wasn't supposed to do and was getting lectured by her parents. She was paying attention to no one."

[*P24] The court then questioned Juror Number 5. She stated that the fire happened approximately twenty years ago. She explained that her four- or five- year old child imitated her by setting the trash on fire. She stated that she did not mention it during voir dire because she "didn't even think about it." The fire department was not called, no one was injured, and "it was just a little trash fire." The court asked whether her prior experience had any impact upon [her] consideration of the case." She stated that it did not. The court nonetheless dismissed her and explained:

"* * * In this case we had specific information from the jury, and we have a situation where something that is so similarly, eerily similar here to the situation, and the foreman's statement, it is only his opinion that she's identifying with the defendant. But, given the nature of what she just told me, and based upon R.C. 2313.43, which provides that any petit juror may be challenged on suspicion or prejudice against or impartiality for either party, and the last sentence of that statute provides that 'the validity of such challenged shall be determined by the court and shall be sustained if the court has any doubt as to the juror's being entirely biased.'

16

> It is the court's belief, based upon the information that she's admitted to as far as her experience and her understanding, that she didn't — the record does not say or does not support a finding she withheld it intentionally, but it — I don't think that is required."

*State v. Coonrod, supra.*

Based on these findings of fact, the Fourth District recited the legal standard quoted above and concluded that removal of Juror Number 5 did not deprive Coonrod of an impartial jury.

> **[\*P29]**  In the case sub judice, we are unable to conclude that the trial court abused its discretion by excusing Juror Number 5. Although the written transcript reveals that Juror Number 5 stated that her prior experience with a child setting a fire did not render her partial to appellant, the trial court actually observed Juror Number 5 when she explained the prior experience and when she stated that it would not affect her ability to render an impartial verdict. Because the trial court saw and heard the juror, including her demeanor, gestures and voice inflections, we must defer to the trial court's determination. The court rationally could have determined that the juror's prior experience rendered her unable to consider the evidence in the trial in an unbiased manner, despite her protestation to the contrary.

> **[\*P30]**  Moreover, even if we assume that the trial court erred by excusing Juror Number 5, appellant has not shown how this alleged error prejudiced him. Crim.R. 52(A) provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In other words the error must have been prejudicial, i.e., it must have affected the outcome of the trial. State v. Fisher, 99 Ohio St.3d 127, 2003 Ohio 2761, 789 N.E.2d 222, ¶7.

> **[\*P31]**  In the case at bar, appellant did not explain how the dismissal of Juror Number 5 affected the outcome of the trial. Any argument that Juror Number 5 would have voted to acquit is speculative. Thus, even if the trial court somehow erred when it excused Juror Number 5, appellant fails to demonstrate how the error is anything other than harmless error. See Brown, supra, ¶53 (observing that appellant's claim that juror excused during deliberations was "likely favorable" to him was "wholly

speculative" and that appellant failed to argue that the alternate juror's participation prejudiced  him).

 [*P32]  Appellant further argues that because the original indictment charged him with a capital offense, the trial court owed him a heightened duty. We observe, however, that after appellant's first trial ended in a mistrial, the state dismissed the aggravated murder charges. Thus, appellant no longer faced any capital offenses and we reject his argument.

 [*P33]  Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.

Since the Fourth District decided this claim on the merits, Petitioner's burden is to show that the decision was contrary to or an objectively unreasonable application of United States Supreme Court precedent.  Petitioner cites no such precedent, but relies heavily on Chief Judge Cole's dissent in *United States v. Patterson,* 587 Fed. App'x 878, 2014 U.S. App. LEXIS 19885 (6th Cir. 2014).  In *Patterson* the majority of the panel upheld dismissal of a deliberating juror who stated "she had information about drugs[3] that she had not revealed during voir dire." *Id.*  at 881.  Chief Judge Cole's dissent focuses on limiting the inquiry into reasons why a deliberating juror might be dismissed so as not to intrude into deliberations.  While he would have come out the other way from the majority, it would have been by adopting procedures from the District of Columbia and Second Circuits for handling these sorts of situations in federal cases, and not necessarily imposing that procedure on the States.  At no place in his opinion does he suggest that a particular procedure is required by Supreme Court precedent or that the majority's approach is contrary to Supreme Court precedent.

In contrast, the Supreme Court itself has just reminded the lower courts of the deference they must give to state court juror exclusion decisions.  In *White v. Wheeler*, 577 U.S. ___, 2015 U.S. LEXIS 7998 (Dec. 14, 2015)(per curiam), the Court summarily and unanimously reversed a

---

[3] *Patterson* was a drug conspiracy case.

Sixth Circuit decision overruling a Kentucky decision that a particular juror was properly excused.

Coonrood has not shown that the Fourth District's decision upholding the excuse of Juror No. 5 was contrary to or an objectively unreasonable application of Supreme Court precedent. Therefore Ground One should be dismissed on the merits.


**Ground Two:  Insufficient Evidence of Child Endangerment**


In his Second Ground for Relief, Coonrod asserts he stands convicted of child endangerment on insufficient evidence.  Respondent concedes this claim is preserved for merit review, but argues it is meritless (Return of Writ, ECF No. 20, PageID 3423-30).  Petitioner argues to the contrary that there was no evidence to show that Coonrod's behavior was the proximate cause of his sons' deaths (Traverse, ECF No. 22, PageID 3476-80).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship,* 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset,* 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir.

2011)(en banc); *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012). Notably, "a court may

sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v.*

*Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of
> judicial deference. First, on direct appeal, "it is the responsibility of
> the jury -- not the court -- to decide what conclusions should be
> drawn from evidence admitted at trial. A reviewing court may set
> aside the jury's verdict on the ground of insufficient evidence only
> if no rational trier of fact could have agreed with the jury."
> *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d
> 311, 313 (2011) (per curiam). And second, on habeas review, "a
> federal court may not overturn a state court decision rejecting a
> sufficiency of the evidence challenge simply because the federal
> court disagrees with the state court. The federal court instead may
> do so only if the state court decision was 'objectively
> unreasonable.'" Ibid. (quoting Renico v. Lett, 559 U. S. ___, ___,
> 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(per curiam).

The Fourth District found there was sufficient evidence to support the child

endangerment convictions, holding:

> **[*P46]** R.C. 2919.22(A) sets forth the essential elements of the
> crime of child endangering:
>
> > No person, who is the parent, guardian, custodian, person
> > having custody or control, or person in loco parentis of a
> > child under eighteen years of age * * * shall create a
> > substantial risk to the health or safety of the child, by
> > violating a duty of care, protection, or support. * * * *
>
> Thus, a successful R.C. 2919.22(A) conviction requires proof that:
> (1) a parent, guardian, custodian, or person having custody or
> control over (2) a child under eighteen years of age (3) recklessly
> created a substantial risk to the health or safety of the child (4) by
> violating a duty of care, protection, or support. When a defendant
> is charged with third-degree felony child endangering, the state
> also must prove that the defendant's R.C. 2919.22(A) violation
> resulted in serious physical harm to the child. State v. Newman,
> 4th Dist. No. 94 CA 2079, 1995 Ohio App. LEXIS 3713 (Aug. 18,

1995), citing State v. Barton, 71 Ohio App.3d 455, 462-463, 594 N.E.2d 702 (1st Dist. 1991), State v. Elliott, 104 Ohio App. 3d 812, 663 N.E.2d 412 (1995), and State v. Kirk, 10th Dist. No. 93AP-726, 1994 Ohio App. LEXIS 1189 (Mar. 24, 1994).

[*P47]  R.C. 2901.22(C) defines "recklessly" [footnote omitted] as follows:

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

[*P48]  R.C. 2901.01(A)(8) defines a "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

[*P49]  "R.C. 2919.22(A) is aimed at preventing acts of omission or neglect." Newman, supra, citing State v. Sammons, 58 Ohio St.2d 460, 391 N.E.2d 713 (1979), and State v. Kamel, 12 Ohio St.3d 306, 308, 12 Ohio B. 378, 466 N.E.2d 860 (1984). Thus, "[a]n inexcusable failure to act in discharge of one's duty to protect a child where such failure to act results in a substantial risk to the child's health or safety is an offense under R.C. 2919.22(A)." Kamel at paragraph one of the syllabus.

[*P50]  In the case sub judice, appellant challenges whether the state presented sufficient evidence to show that he recklessly created a substantial risk to the children's health or safety by violating a duty of protection or care. Appellant claims that the children's death resulted from a tragedy, not from his failure to discharge a duty of care or protection. He asserts that he "tried to keep [his] smoking materials up and away from [the children]. He bought a fire extinguisher. He moved into a home he thought had working [sic] smoke detectors. The trial court thought he should have kept his smoking materials in a lock box. The trial court thought he should die with his children. This is not what the law requires."

[*P51]  After our review of the evidence presented at trial, we believe that the state presented sufficient evidence to establish that appellant recklessly created a substantial risk to the children's

health and safety by violating a duty of care or protection. Contrary to appellant's argument, this is not simply a situation in which appellant failed to secure smoking materials, or in which he failed to run into a burning building to save his children. Instead, appellant left his two screaming children inside a burning house and, if the state's evidence is believed, did nothing to help them. See Sammons, supra, at 463 (stating that "to stand by and do nothing to prevent the torturous branding of one's children * * * meets no standard, however abysmally low"). Appellant did not tell anyone where to find the children. Several bystanders attempted to rescue the children from the fire, but the only thing appellant did was ask for a cigarette. Appellant showed no interest in even aiding an attempt to rescue his children. See id. (stating that "[t]he norm in our society is for a parent to strive to see that his children are * * * reasonably protected from harm").

 [*P52]  Furthermore, the state presented evidence that appellant exited the burning house through the front door, then locked the door on his way out, creating, in essence, a trap for the children. Multiple witnesses also testified that appellant smelled of alcohol and appeared intoxicated. The foregoing evidence would allow a reasonable jury to conclude that appellant violated a duty of care or protection to his children. Even if appellant did not have a duty to run into a building burning to save his children, he did have a duty not to become so intoxicated that he was unable to provide assistance in locating his children. He also had a duty not to create a trap for the children by locking all doors and windows.

 [*P53]  Moreover, appellant's actions on the night of the fire are truly disturbing. According to the state's witnesses, appellant stood idly by while his children were inside the burning house, screaming for help. In short, appellant's apathetic attitude on the night of the fire permitted a reasonable jury to conclude that appellant exhibited a heedless indifference to his children's safety and perversely disregarded the known risk that if the children were not rescued, they would suffer serious and substantial injury— which they obviously did in this case. His "inexcusable failure to act in discharge of [his] duty to protect" his children resulted in a substantial risk to the children. Thus, the state presented sufficient evidence to show that appellant committed third-degree felony child endangering.

[*P54]  While we recognize that appellant presented conflicting and contrary evidence, a sufficiency of the evidence argument does not permit us to weigh competing versions of the facts. Instead, we must review the record, in the light most favorable to the state, to

> determine whether the state presented sufficient evidence to prove its case. Thus, arguments concerning conflicting evidence are misplaced in the sufficiency-of-the-evidence context. Knowlton, supra; State v. Long, 1st Dist. No. C-110160, 2012 Ohio 3052, ¶48 (stating that when reviewing the sufficiency of the evidence, a reviewing court may not "resolve evidentiary conflicts"); accord State v. Willard, 144 Ohio App.3d 767, 777-778, 761 N.E.2d 688 (10th Dist. 2001). Appellant cannot, therefore, point to conflicting testimony to support his claim that the state failed to present sufficient evidence to support his convictions.

*State v. Coonrod, supra.*

Although the Fourteenth Amendment requires proof beyond a reasonable doubt of all elements of a crime, it is state law which sets the elements. *In re Winship, supra.* Here the relevant element is proximate causation. In the case Petitioner relies on for contrast, *State v. Torr*, 2002 WL 47040 (10th Dist. Jan. 15, 2002), the court found that a contributing proximate cause of the child's death by fire was the child's own propensity to play with fire and the proof that the fire had been started by some instrument for lighting cigarettes. Here there was substantial evidence of an accelerant, likely inconsistent with a child-set fire. More importantly there was evidence, uncontradicted, that Coonrod left the burning apartment by the front door and locked it behind himself. Whether he did that intentionally or was too drunk to notice, it created a substantial risk that the young children left behind in the burning apartment would be seriously harmed.

In sum, the Fourth District's conclusion that there was sufficient evidence to support the child endangerment convictions is neither contrary to nor an objectively unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979). The Second Ground for Relief should be dismissed.

**Ground Three:  Insufficient Evidence of Involuntary Manslaughter**

In his Third Ground for Relief, Petitioner asserts there was insufficient evidence to convict him of involuntary manslaughter. Respondent concedes this claim is preserved for merit review, but argues it is meritless (Return of Writ, ECF No. 20, PageID 3430-32).  Petitioner correctly notes that the offense of involuntary manslaughter in Ohio requires that the defendant's commission of a felony be the proximate cause of another's death and that the only felonies which can support the manslaughter convictions are the child endangerment convictions.

In deciding that there was sufficient evidence to support the homicide convictions, the Fourth District held:

> [*P55]  Appellant also argues that the state failed to present sufficient evidence to support his involuntary manslaughter convictions. He raises the same essential arguments that he raised when he argued that the state failed to present sufficient evidence to support his child endangering convictions, i.e., that he did "everything humanly possible to make sure this home was safe from fire for his children." As we have already explained, however, this case is not so much about appellant's actions before the fire, but about his inaction after the fire. Even if appellant took steps to prevent his children from starting a fire, once that fire started, he failed to take any steps to protect his children. In fact, appellant allowed his children to scream for their lives inside the house while he did nothing to help or to help others find the children. Consequently, we cannot agree with appellant that the state failed to present sufficient evidence to support his involuntary manslaughter convictions.

*State v. Coonrod, supra.*

Essentially the only argument Petitioner makes is that the child endangerment convictions are constitutionally flawed and the manslaughter convictions thus undermined (Traverse, ECF No. 22, PageID 3482).  Because the child endangerment convictions are constitutionally acceptable, Petitioner's argument as to the manslaughter convictions also fails.

Therefore the Third Ground for Relief should be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

December 16, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).